JOHN M. THOMPSON & CO., INC., Respondent, *v.* NEW MADISON SQUARE GARDEN CORPORATION, Appellant.

First Department, April 5, 1929.

*C. Frank Reavis, Jr.*, of counsel [*J. Arthur Leve* and *Martin D. Jacobs* with him on the brief; *Chadbourne, Stanchfield & Levy,* attorneys], for the appellant.

*Harold R. Medina* of counsel [*Eugene A. Sherpick* and *William F. McNulty* with him on the brief; *Medina, Sherpick & McKee,* attorneys], for the respondent.

FINCH, J. From a judgment in favor of the plaintiff, entered upon the verdict of a jury, in an action by a real estate broker to recover commissions claimed to have been earned upon an unconsummated sale of real property, the defendant appeals.

The New Madison Square Garden Corporation purchased the property formerly used as car barns for the street railways on Eighth avenue between Forty-ninth and Fiftieth streets. The purchaser purposed to sell the Eighth avenue frontage, reserving

an easement from Eighth avenue to an arena to be built by the New Madison Square Garden Corporation in the rear of the frontage. The plaintiff corporation, as a licensed real estate broker, endeavored to earn a commission by bringing a purchaser who was ready, willing and able to purchase the property upon the terms at which the defendant wished to sell. The broker wrote many letters and exerted much effort to cause the minds of the parties to meet, and they did meet on a large majority of the various items which went to make up the agreement. For the purposes of this decision it is unnecessary to set forth the terms upon which the parties agreed. Upon at least one point, however, and that an essential part of the agreement, the minds of the parties never met, and, therefore, the broker did not earn his commission. The item in question concerned the amount of a bond to be given by the New Madison Square Garden Corporation to insure to the purchaser of the Eighth avenue frontage the completion of the arena by the New Madison · Square Garden Corporation. At first the proposed purchaser of the Eighth avenue frontage made it a vital part of his offer that the amount of the bond should be $1,000,000. Through subsequent negotiations the precise amount of this bond was left as a matter later to be agreed upon by the parties. The plaintiff says in its brief: "At the outset the parties concededly agreed that this assurance should take the form of a completion bond which Jackson [the owner of the proposed corporate purchaser] at first insisted should be in a sum not less than a million dollars. Rickard, however, considered a million dollars excessive. It is undisputed (in fact, even Colonel Hammond admits it) that Jackson thereupon withdrew his demand that the bond should be in a sum not less than a million dollars, whereupon the parties agreed that the matter of the bond, the precise amount of which they assured one another was a mere detail which could be agreed upon later, was settled." The precise amount of this bond, however, even if called a mere detail concededly involved the necessity of an agreement thereon. This is corroborated by the contract drawn by the lawyer for the proposed purchaser, which, while making a provision for the bond, left the amount thereof blank. Nor did the parties agree upon any method for arriving at this amount which could be substituted for the right of the parties themselves to reach an agreement thereon.

A broker is not entitled to his commission unless the minds of the parties have met not merely on the price, but on all the terms and incidents of the transaction. In *Gallagher* v. *Dullea* (199 App. Div. 119), COCHRANE, J., speaking for the court, said: " It has been held that commissions on the sale of real estate are not

earned until the minds of the buyer and seller meet, not only in respect to the price, but also in respect to the terms of the sale and all the incidents of the transaction which must be worked out and understood between them."

In *Maxwell* v. *Hamilton Apartments, Inc.* (215 App. Div. 348), it was held that the failure to agree on the period and rate of interest of a second mortgage prevented a finding that there was a meeting of the minds of the parties. In the same way, in *Haase* v. *Schneider* (112 App. Div. 336) it was held that the broker had not brought the minds of the parties together because the time of the closing of the transaction had not been agreed to, the seller insisting upon eleven days and the purchaser upon thirty. In *Arnold* v. *Schmeidler* (144 App. Div. 420) it was held that the minds of the parties had not met because no agreement was reached as to whether the owner might hold the amount of the interest on the mortgage, which would accrue at the time of the passing of the title, as further security for the payment of the mortgage. The above instances are cited by way of example to show that in comparison they were more of a so-called mere detail than was the amount of the bond guaranteeing the building and completion of the new Madison Square Garden. At the least, therefore, as to the amount of this bond, the minds of the parties had not met.

Moreover, it is clear to any one studying this record that the parties had not in fact agreed upon the complete rights and duties which should comprise the reservation of the easement running from Eighth avenue to the arena. The plaintiff endeavors to create a question of fact as to this by testimony that only the committing of the agreement to writing remained, but one can come to no other conclusion than that a finding by the jury that such was the fact would be against the weight of the evidence. There are also other elements of the agreement upon which it is clear that there was no meeting of the minds and which yet remained to be thrashed over by the parties, at the time when the negotiations were terminated. It is unnecessary, however, to rest this decision upon any ground except that the precise amount of the bond to be given for the building and completion of the new Madison Square Garden was still to be determined by the parties, and also upon the following: Concededly the plaintiff did not obtain the consent of the directors of the New Madison Square Garden Corporation to any offer proposed by him. In place thereof the plaintiff seeks to hold that such authority was unnecessary. Under the precise facts of this case, however, it appears that both plaintiff and defendant carried on these lengthy negotiations with full notice and knowledge that the approval of the board of directors of the New

Madison Square Garden Corporation was necessary. In January, 1924 (and it is to be noted that the plaintiff does not claim a meeting of the minds until eleven months thereafter or November 14, 1924), the president of the plaintiff wrote to the Madison Square Garden Corporation:

"* * * I have a client who would purchase the property and lease to Mr. Rickard and his associates such part of it as may be necessary, retaining for themselves the Eighth Avenue front.

"I would like to talk this over with you tomorrow in order to present it in the proper shape before the meeting of the Directors on Thursday.

"Yours very truly,
"[sgd] JOHN W. THOMPSON."

In October, 1924, the Madison Square Garden Corporation wrote to the president of the plaintiff:

"Your letter of October 10th has been duly received and I will investigate the borrowing possibilities which you mention.

"If it were possible to borrow $900,000 instead of $800,000 it is possible that a lease might meet with the approval of the Board of Directors."

Upon this record it was necessary, therefore, for the board of directors of the defendant to approve any agreement that was reached by its officers, and of this the plaintiff had full knowledge. The broker has thus failed to produce a meeting of the minds of the parties upon the purchase and sale of the property for which it is claiming commissions and, therefore, cannot succeed in this action.

It follows that the judgment and order appealed from should be reversed, with costs, and the complaint dismissed, with costs.

DOWLING, P. J., McAVOY, MARTIN and O'MALLEY, JJ., concur.

Judgment and order reversed, with costs, and complaint dismissed, with costs.